# STATE OF CONNECTICUT *v.* MICHAEL KNYBEL, JR.
## (SC 17650)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 23, 2006—officially released March 20, 2007

708

*William J. O'Sullivan*, with whom, on the brief, was *Shannon Tracy Bergquist*, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Lisa Herskowitz*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Michael Knybel, Jr., appeals from the judgment of the trial court revoking his probation imposed in connection with a previous conviction. The defendant claims that the trial court improperly revoked his probation under General Statutes § 53a-32.[1] The defendant's claim is twofold. First,

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . . Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. . . .

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. . . ."

the defendant contends that the court improperly determined that he had violated the general condition of his probation, namely, that he not violate the laws of the state, by operating a motor vehicle while his operator's license was under suspension in violation of General Statutes § 14-215 (c),[2] because the statute is unconstitutionally vague as it applies to the use of an all-terrain vehicle (ATV). Second, the defendant contends that the special condition of his probation barring him from operating a motor vehicle while his license was under suspension did not adequately apprise him that a motor vehicle included an ATV and, therefore, was unconstitutionally vague.[3] We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the resolution of this appeal. On July 27, 2001, the defendant pleaded guilty to operating a motor vehicle while under the influence of liquor or drugs or both, as a third time offender, in violation

[2] General Statutes § 14-215 (c) provides: "Any person who operates any motor vehicle during the period such person's operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars or more than one thousand dollars and imprisoned not more than one year, and, in the absence of any mitigating circumstances as determined by the court, thirty consecutive days of the sentence imposed may not be suspended or reduced in any manner. The court shall specifically state in writing for the record the mitigating circumstances, or the absence thereof."

Although § 14-215 (c) recently was amended; see Public Acts 2004, No. 04-257, § 100 (effective June 14, 2004); the amendments are technical in nature. In the interest of simplicity, we refer to the current revision of § 14-215 (c).

[3] The defendant also claims that the trial court improperly determined that, under Connecticut law, an ATV is a motor vehicle. This issue is not a separate claim but, rather, an argument that is necessary to resolve the first two claims.

of General Statutes (Rev. to 2001) § 14-227a,[4] and operating a motor vehicle while his license was suspended in violation of § 14-215 (c). On September 13, 2001, the defendant was sentenced to three years imprisonment, suspended after one year, and three years probation. The terms of the defendant's probation included a general condition prohibiting him from violating any criminal law of the state and a special condition prohibiting him from operating a motor vehicle while his license was under suspension. The defendant's license, which had been suspended on several previous occasions, was permanently suspended by the department of motor vehicles on October 17, 2001. On September 11, 2002, after serving one year of his sentence, the defendant was released from prison, and his probation commenced.

On May 15, 2004, the defendant operated an ATV in the travel lanes of various roads in the towns of Union and Stafford.[5] A conservation officer with the department of environmental protection stopped the defendant while he was operating his ATV and issued him citations for operating an unregistered ATV in violation of General Statutes § 14-380,[6] and for operating an ATV

[4] General Statutes (Rev. to 2001) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

General Statutes (Rev. to 2001) § 14-227a (h) provides in relevant part that a person convicted of a third and subsequent violation of subsection (a) of § 14-227a shall be imprisoned not more than three years, one year of which may not be suspended or reduced.

[5] The defendant was accompanied by his two sons, who were driving dirt bikes.

[6] General Statutes § 14-380 provides in relevant part: "[N]o person shall operate and no owner shall permit the operation of any snowmobile or all-terrain vehicle unless the owner holds a valid, effective registration awarded by this state or by another state or by the United States, provided such state or district of registration grants substantially similar privileges for snowmobiles or all-terrain vehicles owned by residents of this state and registered under its laws, and unless the identification number set forth in such registration is displayed on such snowmobile or all-terrain vehicle as prescribed in section 14-381, provided every resident of this state shall obtain

on a public highway in violation of General Statutes § 14-387 (1).[7] Thereafter, the defendant was charged with operating a motor vehicle while his license was under suspension in violation of § 14-215 (c), and with a violation of his probation under § 53a-32.

On June 14, 2005, after a hearing, the trial court determined that the defendant had violated the general terms of his probation when he operated his ATV on a public highway in violation of § 14-215 (c), which makes it a criminal offense for a person to operate a motor vehicle while his license is under suspension. The court also determined that the defendant had violated the special condition of his probation that he not operate a motor vehicle while his license was under suspension. As a result, the trial court rendered judgment revoking the defendant's probation and ordering him to serve the remaining two years of his suspended sentence. The defendant appealed to the Appellate Court from the trial court's judgment, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

such registration from this state under the provisions of section 14-381, before such operation shall be lawful. The provisions of this section shall not apply (1) to the operation of a snowmobile or all-terrain vehicle on premises owned or leased by the owner of such snowmobile or all-terrain vehicle or (2) to the operation of a snowmobile in any organized contest as long as such snowmobile is operated in the contest area, provided the owner of such snowmobile holds a valid, effective registration awarded by this state or by another state or the United States."

[7] General Statutes § 14-387 provides in relevant part: "No person shall operate a snowmobile or all-terrain vehicle in the following manner: (1) On any public highway, except such snowmobile or all-terrain vehicle, if operated by a licensed motor vehicle operator, may cross a public highway if the crossing is made at an angle of approximately ninety degrees to the direction of the highway and at a location where no obstruction prevents a quick and safe crossing, the snowmobile or all-terrain vehicle is completely stopped before entering the traveled portion of the highway and the driver yields the right-of-way to motor vehicles using the highway, provided nothing in this subsection shall be construed to permit the operation of a snowmobile or all-terrain vehicle on a limited access highway, as defined in subsection (a) of section 13a-1 . . . ."

I

We first address the defendant's claim that the trial court improperly revoked his probation after finding that he had violated the general condition of his probation that he not violate the laws of the state. Specifically, the defendant claims that § 14-215 (c), which proscribes the operation of a motor vehicle while a person's license is suspended, is unconstitutionally vague as it applies to the use of an ATV. The defendant contends that, in view of the inconsistent definitions of the term "motor vehicle" within the General Statutes, a person of ordinary intelligence could not reasonably have been expected to know that the term "motor vehicle" included an ATV. We disagree.

We begin our analysis with the applicable standard of review for a claim of unconstitutional vagueness. At the outset, we note that the defendant concedes that the issues that he raises on appeal are unpreserved but urges that he should prevail under the plain error doctrine.[8] See Practice Book § 60-5. Alternatively, the defendant argues that he should prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a

---

[8] To prevail under the plain error doctrine, the defendant must demonstrate that "the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). This doctrine is not "implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id., quoting *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992). We conclude that the defendant has not met the rigorous standard for prevailing under the plain error doctrine.

fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. In the present case, the record is adequate for review and the claims are of constitutional magnitude. We conclude, however, that the third prong of *Golding* has not been satisfied because the defendant has failed to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

Turning to the specifics of the defendant's claim, we note that, although our review of a trial court's finding that a particular condition of probation was violated would require us to apply a clearly erroneous standard of review, determining whether that condition is unconstitutionally vague presents a question of law over which our review is de novo. See, e.g., *State* v. *Faraday*, 268 Conn. 174, 191, 842 A.2d 567 (2004). Our analysis first requires us to restate the common-law rule that everyone is presumed to know the law and that ignorance of the law excuses no one from criminal sanction. See, e.g., *Cheek* v. *United States*, 498 U.S. 192, 199, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991); *Covelli* v. *Commissioner of Revenue Services*, 235 Conn. 539, 551 n.21, 668 A.2d 699 (1995), vacated on other grounds sub nom. *Covelli* v. *Crystal*, 518 U.S. 1031, 116 S. Ct. 2577, 135 L. Ed. 2d 1092 (1996). In reviewing a claim that a statute or a condition of probation is unconstitutionally vague, we also must be mindful of the following principles. Our law requires that "a penal statute define [a] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . . [This concept] embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . [T]he

[most] important aspect of the vagueness doctrine is not actual notice . . . but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited . . . and must not impermissibly [delegate] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . Finally, [i]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness . . . for [i]n most English words and phrases there lurk uncertainties. . . . [T]he statute must contain some core meaning within which the defendant's actions clearly fall. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 551–53, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002).

"For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Internal quotation marks omitted.) *State* v. *Jones*, 215 Conn. 173, 180, 575 A.2d 216 (1990). Furthermore, to prevail on his claim, the defendant "must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement." *State* v. *Hopkins*, 62 Conn. App. 665, 675–76, 772 A.2d 657 (2001), citing *Sweetman* v. *State*

*Elections Enforcement Commission*, 249 Conn. 296, 322, 732 A.2d 144 (1999).

In the present case, the defendant claims that § 14-215 (c) is unconstitutionally vague because it did not reasonably apprise him that operating an ATV constituted operating a motor vehicle for purposes of the statute. Specifically, the defendant claims that § 14-215 is vague because the term "motor vehicle" would not commonly be understood to encompass an ATV, the definition of "motor vehicle" contained in § 14-1 excludes vehicles not suitable for operation on a highway, and the various definitions of ATV under the General Statutes indicate that such vehicles are not suitable for highway use. We reject the defendant's claim.

We begin by turning to the relevant statutory provisions to determine whether a person of ordinary intelligence reasonably would have been apprised that a "motor vehicle," as that term is used in § 14-215 (c), includes an ATV. Section 14-215 (c) is contained in chapter 248 of the General Statutes, which addresses vehicle highway use. That statute makes it a criminal offense for "[a]ny person" to operate "any motor vehicle during the period such person's operator's license or right to operate a motor vehicle in this state is under suspension . . . ." General Statutes § 14-215 (c). Chapter 248 provides a definition for the term "motor vehicle," which "includes *all vehicles* used on the public highways . . . ." (Emphasis added.) General Statutes § 14-212 (5). "Vehicle" is further defined as "synonymous with 'motor vehicle'." General Statutes § 14-212 (9). Thus, for purposes of § 14-215 (c), an ATV is a "motor vehicle" if it is a "vehicle."

The conclusion that an ATV is a "vehicle," and thus a "motor vehicle" for purposes of § 14-215 (c), is supported by two definitions of the term ATV contained in other chapters of the General Statutes. General Statutes

§ 14-379 defines an ATV or "[a]ll-terrain vehicle" as "a self-propelled *vehicle* designed to travel over unimproved terrain and which has been determined by the Commissioner of Motor Vehicles to be unsuitable for operation on the public highways . . . ." (Emphasis added.) Similarly, General Statutes § 23-26a defines an ATV or "[a]ll-terrain vehicle" as a "motorized *vehicle*, not suitable for operation on a highway . . . ." (Emphasis added.) As both definitions define an ATV as a "vehicle," and because a "motor vehicle," for purposes of § 14-215 (c), "includes all vehicles used on the public highways"; General Statutes § 14-212 (5); it is clear that an ATV, when used on a public highway, is a "motor vehicle" for purposes of § 14-215 (c).

The defendant contends that § 14-215 (c) is unconstitutionally vague when read together with the definition of "motor vehicle" found in General Statutes § 14-1 because that definition excludes all vehicles "not suitable for operation on a highway . . . ." General Statutes § 14-1 (a) (50). This contention is without merit. On its face, it is clear that the definition of "motor vehicle" found in § 14-1 (a) (50) is applicable only to the provisions in chapter 246 of the General Statutes. See General Statutes § 14-1 (a) ("[t]erms used in *this chapter* shall be construed as follows" [emphasis added]). The statute at issue in the present case, § 14-215 (c), however, is contained in chapter 248 and thus is not implicated by the definition of "motor vehicle" found in § 14-1 (a) (50). The limitation on the application of § 14-1 to chapter 246 is underscored by § 14-212. Section 14-212 defines the term "motor vehicle" for purposes of chapter 248 generally and § 14-215 (c) specifically but incorporates by reference other definitions contained in § 14-1 in providing that certain terms enumerated therein "shall be construed as they are defined in section 14-1 . . . ." General Statutes § 14-212 (1). The term "motor vehicle" is not included in the list of

terms found in § 14-212 (1) that shall be construed as they are defined in § 14-1. In fact, as we have noted, § 14-212 contains its own broad definition of "motor vehicle." In light of the conspicuous absence of the term "motor vehicle" from the list of terms in § 14-212 (1) that are to be construed as they are defined in § 14-1, and the broad definition of "motor vehicle" contained in § 14-212, which is specifically applicable to § 14-215 (c), it is clear that the definition of the term "motor vehicle" in § 14-1 is not applicable to § 14-215 (c).

In addition, the purposes of the two chapters in question are very different, thus requiring the need for a broader definition of the term "motor vehicle" under the chapter concerning vehicle highway use, namely, chapter 248. Chapter 246 requires the registration of a certain class of vehicles that are to be operated within the state. Section 14-1 therefore contains a very limited definition of "motor vehicle" that excludes most vehicles that are not traditionally operated on a public road. On the other hand, chapter 248 regulates the use of motor vehicles on public highways, and that necessarily requires a definition of "motor vehicle" that includes all "vehicles." Therefore, the definition of "motor vehicle" in chapter 248, when read in the context of the General Statutes as a whole, not only suggests a broad definition of the term "motor vehicle" for purposes of chapter 248 but also that all "vehicles" in the various chapters of the General Statutes are included within that term.

After reviewing the relevant statutory provisions, we conclude that § 14-215 (c), which makes it an offense for a person to operate a motor vehicle while his license is under suspension, also prohibits a person from operating an ATV on a public highway while his license is under suspension. In other words, § 14-215 (c) affords a person of ordinary intelligence with fair warning that he is prohibited from operating an ATV on a public

highway while his license is suspended. The statute therefore is not unconstitutionally vague, and, therefore, the defendant cannot prevail on his claim under the third prong of *Golding*. Accordingly, the trial court did not improperly revoke the defendant's probation on the ground that he had violated the general condition of his probation that he not violate the laws of the state.

## II

The defendant next claims that the special condition of his probation prohibiting him from operating a motor vehicle while his license was under suspension was unconstitutionally vague because it did not apprise him that it included the operation of an ATV. Specifically, and similarly to his previous argument, the defendant claims that this condition was unconstitutionally vague because a person of ordinary intelligence reasonably would not have known that it applied to the operation of an ATV. We disagree.

Beyond the statutory definitions of a "motor vehicle" and an ATV that we outlined previously, this claim fails on the basis of our review of the common usage of the terminology in question. In other words, a reasonable inquiry into the definition of the terms in question would have reasonably apprised the defendant that an ATV was included in the special condition of his probation that he refrain from operating a motor vehicle.

Webster's Third New International Dictionary defines a "motor vehicle" as "an automotive vehicle not operated on rails . . . ." Webster's Third New International Dictionary further defines "automotive" as something that is "containing within itself the means of propulsion: self-propelling . . . of, relating to, or concerned with vehicles or machines that propel themselves . . . ."

The defendant concedes that he was operating an ATV within the meaning of General Statutes §§ 14-380

and 14-387 (1). For purposes of these sections, an ATV is defined as "a self-propelled vehicle designed to travel over unimproved terrain . . . ." General Statutes § 14-379. Furthermore, testimony adduced at the defendant's probation revocation hearing established that the ATV that the defendant was operating was "[a] three-wheel ATV" and "[a]n all-terrain vehicle, as far as the ATV laws are concerned." The statutory definition used to describe the ATV that the defendant operated matches the commonly used definition of a "motor vehicle." Thus, a person of ordinary intelligence reasonably would have been apprised that the special condition of the defendant's probation clearly prohibited the operation of an ATV on a public highway while his license was suspended. Accordingly, we conclude that the special condition was not unconstitutionally vague and, therefore, that the defendant cannot prevail under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other justices concurred.