STATE OF CONNECTICUT *v.* RICHARD FONTAINE
(AC 28566)

DiPentima, Beach and Robinson, Js.

Argued October 10, 2008—officially released January 20, 2009

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, *Stephen M. Carney*, senior assistant state's attorney, and *Adam Marks*, certified legal intern, for the appellee (state).

*John W. Watson*, special public defender, for the appellee (defendant).

*Opinion*

ROBINSON, J. The state, with permission of the trial court,[1] appeals from the judgment of the trial court following the granting of the motion of the defendant, Richard Fontaine, to dismiss the charges of operating a motor vehicle while under the influence of intoxicating liquor or drugs under General Statutes § 14-227a and operating a motor vehicle while his license was suspended under General Statutes § 14-215.[2] The state claims that the court improperly granted the defendant's motion to dismiss because a moped[3] falls within

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

[2] The defendant also was charged with a violation of General Statutes § 14-96i, requiring visible lamp or reflectors on a vehicle, but the state entered a nolle prosequi on that charge.

[3] The parties and the court used the terms "moped" and "bicycle with a helper motor" interchangeably. Because the parties stipulated that the defendant was operating a moped, for the purpose of consistency it will be referred to as a moped throughout this opinion.

The defendant, however, contested at oral argument in this court that the parties had stipulated to the type of conveyance the defendant was operating, and claimed that "[t]he record is ambiguous as to what the vehicle was" and, as a result, that the record may be inadequate. The defendant claims that there was no stipulation that he was operating a bicycle with a helper motor and that the only stipulation was that the motor was less than fifty cubic centimeters. In fact, the transcript makes clear that defense counsel (who we note is different from the defendant's appellate counsel) did in fact stipulate that the defendant was operating a moped with a motor under fifty cubic centimeters. The transcript reads as follows:

"The Court: And we've—we're going to—my understanding is, also there's a stipulation that [the defendant] was operating a moped that was under fifty [cubic centimeters]. Is that correct?

the definition of "motor vehicle" for the purposes of being charged with the crime of operating a motor vehicle while under the influence of intoxicating liquor or drugs and with operating a motor vehicle while his license was suspended, and, as such, there was sufficient cause to bring the defendant to trial. We agree and reverse the judgment of the trial court.

The record reflects the following facts and procedural history. The defendant was operating a moped with a motor of less than fifty cubic centimeters on a public highway in the town of Lisbon on the evening of August 20, 2006. State police troopers observed the defendant traveling northbound on Route 12 in Lisbon on a moped at a speed of approximately thirty miles per hour. The moped was traveling in the right shoulder of the road and crossed over into the travel lane of the roadway several times. Trooper Mark Roberts testified that there appeared to be a light attached to the rear of the moped, but the light was difficult to see because it was hanging loosely off the back of the moped.

The troopers followed the moped for approximately one mile until the defendant turned into a restaurant

"[The Prosecutor]: The state would so stipulate, Your Honor.
"[Defense Counsel]: We would stipulate as well.
"The Court: And that he was also operating on a public highway.
"[Defense Counsel]: We would stipulate to that as well, Your Honor.
"[The Prosecutor]: As would the state."
This stipulation was reiterated at the February 9, 2007 issuance of the court's oral decision:
"The Court: There was a stipulation that there was . . . that he operated—
"[Defense Counsel]: He was operating a moped.
"The Court: —that [the defendant] operated a moped of less than fifty [cubic centimeters]—
"[Defense Counsel]: On a public highway.
"The Court:—on a public highway in the town of—whatever it was. Okay.
"[Defense Counsel]: It was Lisbon.
"The Court: The state agrees with that, too?
"[The Prosecutor]: Yes, Your Honor.
"The Court: —for the record.
"[The Prosecutor]: Yes."

parking lot, at which point the troopers drove into the same parking lot and approached the defendant. As Roberts spoke with the defendant about the taillight being a public safety concern, he noticed that the defendant had bloodshot eyes and an odor of alcohol on his breath. Roberts performed a series of field sobriety tests and placed the defendant under arrest. He was charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs under § 14-227a, operating a motor vehicle with a suspended license under § 14-215 and improper visibility of reflectors under § 14-96i.

Prior to his arrest, the defendant had been placed on probation for a second operating under the influence conviction and sentenced to two years incarceration, execution suspended after 120 days, and an unspecified period of probation.[4] One of the conditions of his probation was that the defendant was not to operate a motor vehicle while his license was suspended. A violation of probation hearing was held on November 21, 2006, at which time the court found that the defendant was under the influence at the time of his arrest. This finding was based on the officers' testimony about their observations of the defendant's performance on the field sobriety tests, his general demeanor and his refusal to take a Breathalyzer test. The court did not reach the ultimate issue of whether the defendant had violated his probation; instead, the court asked both parties to submit briefs on the issue of whether a moped with a motor of less than fifty cubic centimeters is a motor vehicle within the meaning of the statutes.

After the parties submitted their briefs, the court granted the defendant's motion to dismiss on January

---

[4] The length of the defendant's probation is not clear from the record, but it is undisputed by either party that he was on probation at the time of his arrest.

30, 2007, and issued an oral decision on February 9, 2007. The court concluded that the general definition of "motor vehicle" in General Statutes § 14-1 applied and that the vehicle at issue was not a "motor vehicle" under the operating under the influence and the operating under suspension statutes.[5] This appeal followed.

The state claims that the court improperly granted the defendant's motion to dismiss. Specifically, the state argues that a moped falls within the definition of "motor vehicle" in General Statutes § 14-212, and, as such, the defendant could in fact be convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs and operating a motor vehicle with a suspended license while driving a moped on a public road. We agree with the state.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Howell*, 98 Conn. App. 369, 377, 908 A.2d 1145 (2006).

We note the well established principles of statutory interpretation. "The process of statutory interpretation

[5] The charges of operating a motor vehicle while under the influence of intoxicating liquor or drugs and operating a motor vehicle with a suspended license were dismissed, and the state entered a nolle on the count of improper visibility of reflectors. On December 15, 2006, the court had found that the defendant was not in violation of his probation because a moped was not a "motor vehicle" under the operating under the influence and the operating under suspension statutes.

involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Custer*, 110 Conn. App. 836, 840, 956 A.2d 604 (2008).

The two statutes at issue are § 14-227a, pertaining to the operation of a motor vehicle while under the influence of intoxicating liquor or drugs, and § 14-215, pertaining to the operation of a motor vehicle while one's license or registration is refused, suspended or revoked. Section 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. . . ." Section 14-215 (a) provides in relevant part: "No person to whom an operator's license has been refused, or, except as provided in section 14-215a, whose operator's license or right to operate a motor vehicle in this state has

been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. . . ."

"Motor vehicle" is defined in §§ 14-1 and 14-212. Section 14-1 is contained in chapter 246, which concerns the department of motor vehicles, the licensing and registration of motor vehicles and drivers' schools. Section 14-212 is contained in chapter 248, the "vehicle highway use" chapter. Sections 14-215 and 14-227a are also located in chapter 248.

Section 14-1 (a) (50) provides: " 'Motor vehicle' means any vehicle propelled or drawn by any nonmuscular power, except aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by physically handicapped persons at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf-cart-type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors, farm implements, such vehicles as run only on rails or tracks, self-propelled snow plows, snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, *bicycles with helper motors as defined in section 14-286*, special mobile equipment as defined in subsection (i) of section 14-165, mini-motorcycle, as defined in section 14-289j, and any other vehicle not suitable for operation on a highway . . . ." (Emphasis added.)

Section 14-212 (1) lists a series of terms that "shall be construed as they are defined in section 14-1 . . . ." The term "motor vehicle" is not included in that list and is defined separately in § 14-212 (5), which provides:

" 'Motor vehicle' includes all vehicles used on the public highways . . . ." Section 14-212 also provides that "[t]erms used in this chapter shall be construed as follows, unless another construction is clearly apparent from the language or context in which the term is used or unless the construction is inconsistent with the manifest intention of the General Assembly . . . ."

The state asserts that *State* v. *Knybel*, 281 Conn. 707, 916 A.2d 816 (2007), which concerned whether all-terrain vehicles (ATVs) were covered by the operating while under suspension statute and which was published after the court's decision was issued, is controlling and that the broad definition of "motor vehicle" found in § 14-212 should be applied.[6] The court in *Knybel* held that an ATV, when used on a public highway,

---

[6] The defendant asserts that *Knybel* cannot be applied retroactively to the facts of this case because it had not been published at the time the court issued its decision on his motion to dismiss. The defendant has not alleged that the state's proposed statutory construction is a violation of the due process vagueness principle, which occurs when "unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect [of which] is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *State* v. *McGann*, 199 Conn. 163, 177, 506 A.2d 109 (1986); see also *State* v. *Cobb*, 251 Conn. 285, 439, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

Merely because our courts have never been called on to decide this issue does not make the defendant not culpable. Regardless, it should have been foreseeable to the defendant that driving his moped on the public highways would have subjected him to the operation while under the influence and operation while under suspension laws. "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." (Internal quotation marks omitted.) *State* v. *Vakilzaden*, 272 Conn. 762, 769, 865 A.2d 1155 (2005).

The statutes, which make clear that any vehicle on the public roads is subject to the driving while under the influence and driving while under suspension laws, gave the defendant fair notice that his conduct was, or at the very least may have been, prohibited at the time that he engaged in it. Furthermore, the *Knybel* court held that "§ 14-215 (c) affords a person of ordinary intelligence with fair warning that he is prohibited from operating

is a "motor vehicle" for the purposes of § 14-215 (c), concluding that the applicable definition of "motor vehicle" was found in § 14-212 (5) and not in § 14-1. Id., 716. The defendant asserts that the logic applied in *Knybel* does not apply to a moped and that the much narrower definition of "motor vehicle" in § 14-1 should apply and should be found to exclude a moped. We disagree and find *Knybel* to be controlling.

The defendant in *Knybel* claimed that § 14-215 (c) was unconstitutionally vague as it applied to the use of an ATV because it did not reasonably apprise him that operating an ATV constituted operating a "motor vehicle" for the purposes of the statute. Id., 715. The court rejected the defendant's claim, initially noting that an ATV is a "motor vehicle" for the purposes of § 14-215 (c) if it is a "vehicle." Id. The court examined the two other definitions of ATV found in other chapters of the General Statutes, both of which define an ATV as a "vehicle," and noted that the definition of "motor vehicle," per § 14-212 (5), includes all vehicles used on the public highways. The court concluded that an ATV, when used on a public highway, is a "motor vehicle" for the purposes of § 14-215 (c). Id., 716.

The court emphasized that "[o]n its face, it is clear that the definition of 'motor vehicle' found in § 14-1 (a) (50) is applicable *only to the provisions in chapter 246 of the General Statutes.* . . . The statute at issue in the present case, § 14-215 (c), however, is contained in chapter 248 and thus is not implicated by the definition of 'motor vehicle' found in § 14-1 (a) (50). The limitation on the application of § 14-1 to chapter 246 is underscored by § 14-212. Section 14-212 defines the term 'motor vehicle' for purposes of chapter 248 generally and § 14-215 (c) specifically but incorporates by reference other definitions contained in § 14-1 in providing

an ATV on a public highway while his license is suspended." *State* v. *Knybel,* supra, 281 Conn. 717–18.

that certain terms enumerated therein 'shall be construed as they are defined in section 14-1 . . . .' General Statutes § 14-212 (1). The term 'motor vehicle' is not included in the list of terms found in § 14-212 (1) that shall be construed as they are defined in § 14-1. In fact, as we have noted, § 14-212 contains its own broad definition of 'motor vehicle.' In light of the conspicuous absence of the term 'motor vehicle' from the list of terms in § 14-212 (1) that are to be construed as they are defined in § 14-1, and the broad definition of 'motor vehicle' contained in § 14-212, which is specifically applicable to § 14-215 (c), it is clear that the definition of the term 'motor vehicle' in § 14-1 is not applicable to § 14-215 (c)." (Citation omitted; emphasis added.) *State* v. *Knybel,* supra, 281 Conn. 716–17.

There is nothing in the *Knybel* court's reasoning that leaves any room to distinguish an ATV from a moped. In the present case, the court reasoned that the state could not prove that the defendant had violated the operating under the influence and operating while under suspension statutes because §§ 14-227a and 14-215 (c) make reference to the operation of a "motor vehicle" while under the influence or while under suspension. The court concluded that because the defendant was operating only a twenty-nine cubic centimeter moped, and such vehicles were exempted from the definition of motor vehicle found in § 14-1, the defendant could not be convicted of operating a *motor vehicle* while under the influence or while under suspension.[7]

---

[7] The court noted in its oral decision that the language in *United States* v. *Dotson,* 34 F.3d 882 (9th Cir. 1994), was instructive. In *Dotson,* the defendant was arrested while driving his moped under the influence of alcohol, and the court found that mopeds are vehicles only for the purposes of the Washington certificate of ownership statute and not the driving while under the influence statute. Id., 883, 886. As the language and legislative history of the Washington statute are not similar to the statutes in question, we find the court's reliance on *Dotson* misplaced.

As the *Knybel* decision makes clear, however, the relevant definition of "motor vehicle" to be applied when determining if someone has violated § 14-215 is the much broader definition found in § 14-212. "[T]he purposes of the two chapters in question are very different, thus requiring the need for a broader definition of the term 'motor vehicle' under the chapter concerning vehicle highway use, namely, chapter 248. Chapter 246 requires the registration of a certain class of vehicles that are to be operated within the state. Section 14-1 therefore contains a very limited definition of 'motor vehicle' that excludes most vehicles that are not traditionally operated on a public road. On the other hand, chapter 248 regulates the use of motor vehicles on public highways, and that necessarily requires a definition of 'motor vehicle' that includes all 'vehicles.' Therefore, the definition of 'motor vehicle' in chapter 248, when read in the context of the General Statutes as a whole, not only suggests a broad definition of the term 'motor vehicle' for purposes of chapter 248 but also that all 'vehicles' in the various chapters of the General Statutes are included within that term." *State* v. *Knybel*, supra, 281 Conn. 717. This same logic applies to a conviction under § 14-227a, as that provision is also found in chapter 248, the vehicle highway use chapter.

The defendant contends that mopeds should be distinguished from ATVs because ATVs are defined as "a self-propelled vehicle"; see General Statutes § 14-379; while a moped is not wholly self-propelled and in some cases must be propelled by the rider's own feet. This distinction makes no difference. Whether a vehicle is wholly self-propelled does not change whether it is a "vehicle," and thus a "motor vehicle," for the purposes of chapter 248; per § 14-212 (5), any vehicle that is driven on the public highways is a "motor vehicle" under chapter 248.

Furthermore, the defendant ignores the fact that a moped, or a bicycle with a helper motor, is *intended* to be used on the public highways, while the primary purpose of an ATV is to be driven off-road.[8] A bicycle with a helper motor is subject to licensing requirements and other regulations that do not apply to an ATV and which make the conclusion that the operating while under the influence statute, if applicable to an ATV, is most certainly applicable to a moped.[9]

The judgment dismissing the charges against the defendant is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[8] " 'All-terrain vehicle' means a self-propelled vehicle designed to travel over unimproved terrain and which has been determined by the Commissioner of Motor Vehicles to be unsuitable for operation on the public highways which is not eligible for registration under chapter 246 . . . ." General Statutes § 14-379.

This definition is found in chapter 255 of the General Statutes, which is entitled "Snowmobiles and All-Terrain Vehicles." We look to other chapters in this instance under the axiom that "[i]n construing a statute, the court may look to other statutes relating to the same subject matter for guidance." *Petco Insulation Co.* v. *Crystal*, 231 Conn. 315, 324, 649 A.2d 790 (1994). Our reference to statutes in other chapters of the General Statutes does not change our conclusion that the definitions found in § 14-212 apply to chapter 248, as we look first for guidance to the definitions in the chapter in which the statutes in question are located. See General Statutes § 14-212 ("[t]erms in . . . chapter [248] shall be construed as follows, unless another construction is clearly apparent from the language or context in which the term is used").

[9] See General Statutes § 14-286 (b) ("[n]o person shall ride a bicycle with a helper motor unless that person holds a valid motor vehicle operator's license. No person shall operate a bicycle with a helper motor at a rate of speed exceeding thirty miles per hour; nor shall any bicycle with a helper motor be operated on any sidewalk, limited access highway or turnpike").

By contrast, an ATV is not permitted to be operated on a public highway except to cross it. See General Statutes § 14-387 ("[n]o person shall operate a snowmobile or all-terrain vehicle in the following manner: (1) On any public highway, except such snowmobile or all-terrain vehicle, if operated by a licensed motor vehicle operator, may cross a public highway if the crossing is made at an angle of approximately ninety degrees to the direction of the highway and at a location where no obstruction prevents a quick and safe crossing, the snowmobile or all-terrain vehicle is completely stopped

before entering the traveled portion of the highway and the driver yields the right-of-way to motor vehicles using the highway"). The statutes do not require that a person hold a valid motor vehicle operator's license to drive an ATV, unless, as *Knybel* makes clear, it is driven on a public road.