## STATE OF CONNECTICUT *v.* ONTARIO I. GAINEY
## (AC 29143)

Flynn, C. J., and Robinson and Lavery, Js.

Argued April 30—officially released September 1, 2009

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *David A. Gulick*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Ontario I. Gainey, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a).[1] On appeal, the defendant claims

---

[1] The substitute information in this case charged the defendant with the crime of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The defendant was acquitted of this charge but convicted of the lesser included offense of possession of narcotics in violation of § 21a-279 (a).

that (1) the trial court improperly responded to a jury question regarding nonexclusive possession and (2) the evidence adduced at trial was insufficient to prove that he constructively possessed the heroin found hidden in a car.[2] We agree with the defendant on both claims and reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On November 10, 2005, the Waterbury police department served a search warrant for the defendant, his residence and a Chevrolet Blazer (Blazer) in the yard. Upon the police officers' entry into the house where the defendant resided, they detained the defendant and a female individual inside. One of the officers found a set of keys in one of the bedrooms on the first floor, which unlocked the Blazer in the yard.[3] Also found in that bedroom was an eviction notice addressed to the defendant and a Jane Doe. The search then moved to the kitchen where a scale and a plastic bag with rice were found. There were no drugs, money or needles found in the house. The search then continued inside the Blazer. The search yielded a two month old Connecticut Light and Power Company shut off notice in the defendant's name, a screwdriver that was being used to start the ignition, as well as a cellular telephone instruction manual with the defendant's nickname written on it with "several hearts and designs on it" found under the rear seat. But the search did not yield any insurance or registration cards, and the last registered owner of the vehicle was not the defendant. Hidden in the ashtray area in the rear passenger compartment, the officers found a plastic bag with several ounces

---

[2] The defendant also alleges that the original jury instruction on constructive possession was inaccurate as a matter of law and that the prosecutor committed impropriety in his arguments to the jury. Because the first two claims are dispositive of this case, we decline to review these claims.

[3] The testimony was clear that the officers did not know in whose bedroom the keys were found or to whom the keys belonged.

of rice and fifteen blue glassine bags with a brown substance in it that was later confirmed as heroin.

During deliberation, the jury sent seven notes to the court. The first note requested that the testimony regarding the plastic bag in which the heroin was stored be read back. The court complied with this request. The second note requested that the court repeat its charge to the jury on the charged offense and the lesser included offense. The court in response reread a portion of its instructions and provided the jury with a three page handout of its instructions. The third note requested that the court "define further: 'knowingly possessed or had under his control'? More specific what does under control mean?" The court responded by rereading the instructions it previously had given on constructive possession. The fourth note requested that the jurors have the response to their third note in writing. The court responded by providing the jury with a two page handout containing the instructions requested. The fifth note indicated that the jury had reached a verdict on the first count but had reached a stalemate as to the lesser charge. The court responded by giving a "Chip Smith" charge.[4] The sixth note had four separate questions: (1) "[w]ith regards to 'constructive possession' in court exhibit [six], it is stated that constructive possession requires two things, control and knowledge. Can we find constructive possession with only knowledge or only control. Because in court exhibit [three] it states *or* not *and*"; (2) "If we find joint possession do we have to find exclusive control?"; (3) "Can you define exclusive control?"; and (4) "If we find the defendant is not the exclusive owner of the vehicle,

---

[4] "The purpose of the [Chip Smith] instruction is to prevent a hung jury by urging the jurors to attempt to reach agreement. It is a settled part of Connecticut jurisprudence . . . . D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions Criminal Jury Instructions (2d Ed. 1997) § 4.4, p. 245." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 112 n.4, 947 A.2d 261 (2008).

can we still infer that he contro[l]led the vehicle?" (Emphasis in original.) The court responded to the note by saying, "I cannot answer specific questions that you ask under our law, but I am going to send you back into the jury room with court's exhibit nine, which is a chronological portion or an orderly portion of more of the instruction. It includes the portions that you previously had, and those were provided to you separately to answer or to assist you in answering your earlier questions." The jury's final note indicated that the jury had reached a decision on both counts. The jury found the defendant not guilty of possession of narcotics with intent to sell by a person who is not drug-dependent and guilty of possession of narcotics. The court sentenced the defendant to a term of four and one-half years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly addressed the sixth jury note that specifically asked for direction on exclusive control and whether an inference of control of the vehicle could be made if the defendant was not the exclusive owner. The state argues that the court fairly informed the jury of the law and gave it sufficient guidance. We agree with the defendant.

The defendant did not preserve his claim and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] We conclude that the first prong

---

[5] In *Golding*, our Supreme Court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Knybel*, 281 Conn. 707, 712–13, 916 A.2d 816 (2007). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . .

of *Golding* is satisfied because we were presented with a full transcript of the hearings and the jury notes so that the record is adequate for review. We conclude that because the jury clearly alerted the court about its confusion as a result of the instructions regarding the element of possession, the claim is of constitutional magnitude. See *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995). Accordingly, we conclude that the defendant's claim is reviewable.

Because we conclude that the defendant's claim is reviewable, we identify the applicable standard of review and set forth the legal principles that govern our resolution of the defendant's instructional claims. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360–61, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "[I]n appeals involving a constitutional

involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 500, 903 A.2d 169 (2006).

question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Smith*, 70 Conn. App. 393, 398, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002).

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable ' doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), quoting *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

In its instructions to the jury, the court discussed that there may be either actual or constructive possession, and it explained what is needed to establish either. There was no instruction or guidance from the court, however, on nonexclusive possession. The defendant does not claim that this omission in the original instruction was improper, only that it was improper not to address it once the jury explicitly raised the issue. The state argues that this claim has been considered and rejected by this court in *State* v. *Crawley*, 93 Conn. App. 548, 567, 889 A.2d 930, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006). We conclude that this case is readily distinguishable from *Crawley*. To start, in *Crawley*, the defendant claimed impropriety in the original jury charge in that the court failed to address nonexclusive possession. Id., 565. Further, this court held that "with regard to the doctrine of nonexclusive possession, the court's failure to deliver such an instruction on its own initiative, absent a request to charge, would constitute a constitutional violation only if the court was obligated to deliver such an instruction when it is warranted by the evidence in a case before it." Id., 568.

Most importantly, the jury in *Crawley* did not itself request instruction on nonexclusive possession. Id. Here, when the jury itself requested instruction on this doctrine, and having evidence that warranted such an instruction, not providing the jury with what it needed to decide this case was a constitutional violation.

There was testimony in this case that there was another person in the house when the police served the search warrant and testimony that an officer found an eviction notice addressed to the defendant and a Jane Doe. There was no police testimony that it was clear that the bedroom in which the keys to the Blazer were found belonged to the defendant. In fact, the testimony made it clear that the officers did not know whose room it was. Further, it was unclear to whom the Blazer belonged. Because there was no written request to charge from the defendant, we do not consider whether there should have been an instruction on nonexclusive possession in the original charge. We conclude, however, that once the jury itself raised the concern of nonexclusive possession, and because there was adequate evidence to put nonexclusive possession in issue, the court should have instructed the jury on the relevant law.[6] This failure to instruct affected the jury's deliberation on the essential element of control, which the state had to prove in this case beyond a reasonable doubt.

On the basis of our review of the record and relevant case law, we conclude that it is reasonably possible that the jury was misled by the court's instruction, and,

---

[6] In the model charge on possession, the following is the language set out for nonexclusive possession: "[i]f you find that the defendant *was not* in exclusive possession of the premises where the narcotics were found, in order to infer that [the defendant] knew of their presence, and that [the defendant] was in control of them, you must also find that he made an incriminating statement or that there are other circumstances which tend to support that inference." (Emphasis in original.) D. Borden & L. Orland, 5A Connecticut Practice Series: Connecticut Criminal Jury Instructions (4th Ed. 2007) § 15.2, p. 405.

therefore, the defendant has satisfied the third prong of *Golding.* Cf. *State* v. *Tate*, 59 Conn. App. 282, 286, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000).

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) *State* v. *Montgomery,* supra, 254 Conn. 738, quoting *Neder* v. *United States*, supra, 527 U.S. 17. On the basis of our review of the record, we conclude that the court's omission of this instruction was harmful to the defendant, as the evidence of his control of the heroin was minimal. The presence of a two month old utility bill in the glove compartment and a cellular telephone instruction booklet found under the rear seat with the defendant's nickname written on it surrounded by handwritten hearts and designs on it is not overwhelming evidence that the defendant had exclusive possession over the Blazer. Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that the defendant knew of their presence and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. See *State* v. *Williams*, 258 Conn. 1, 7, 778 A.2d 186 (2001).

Accordingly, after reviewing the record, we conclude that the omitted element of control of the narcotics was contested and not supported by incriminating statements or other buttressing evidence of any substance; absent the error, the jury verdict may not have been the same. See *State* v. *Montgomery,* supra, 254 Conn. 738. The defendant's claim satisfies the fourth prong of *Golding* because the state has failed to demonstrate

harmlessness of the alleged constitutional violation beyond a reasonable doubt, and the error may have resulted in the defendant's conviction.

## II

The defendant also claims that the evidence was insufficient to prove the element of control necessary for a conviction of possession of narcotics. The state argues that there was a reasonable basis for the jury to infer that the defendant constructively possessed the heroin. We agree with the defendant.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by

the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 518, 782 A.2d 658 (2001).

We construe the elements of § 21a-279a and apply them to the facts as reasonably could be found by the jury. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *State* v. *Rios*, 110 Conn. App. 442, 449, 954 A.2d 901 (2008).

Pursuant to our rules of law, § 21a-279 (a) requires that "the state . . . establish beyond a reasonable doubt that the accused knew of the character of the

drug and its presence and exercised dominion and control over it. . . . Where . . . the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 242, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003). "To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." (Internal quotation marks omitted.) *State* v. *Davis*, 84 Conn. App. 505, 510–11, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004).

The only element that the defendant contests is control. The state was required to prove beyond a reasonable doubt that the defendant possessed the heroin seized by the police. See General Statutes § 21a-279 (a). Such possession may be actual or constructive. *State* v. *Williams*, 110 Conn. App. 778, 785, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). Both actual and constructive possession require a person to exercise dominion and control over the controlled substance and to have knowledge of its presence and character. *State* v. *Hernandez*, 254 Conn. 659, 669, 759 A.2d 79 (2000). Actual possession requires the defendant to have had " 'direct physical contact' " with the narcotics. *State* v. *Williams*, supra, 787. Typically, the state will proceed under a theory of constructive possession when the narcotics are not found on the defen-

dant's person at the time of arrest but the accused still exercises dominion and control. See, e.g., *State* v. *Fasano,* 88 Conn. App. 17, 25, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006).

The heroin was not found on the defendant's person. He was not in control of the Blazer at the time the heroin was found. The record is devoid of any incriminating statements made by the defendant. To infer that the defendant had control of the narcotics, there must be circumstances tending to buttress such an inference.

The state argues that the eviction notice in the bedroom supported an inference that the room was the defendant's, as there was no evidence to show that the woman detained during the search was the Jane Doe named in the notice or that she even lived at the house. The state then argues that an inference can then be made that because the keys to the Blazer were found in what can be inferred as the defendant's bedroom, the keys belonged to the defendant. Further, the state argues that the two items with the defendant's name, and the lack of any other items that seemed to belong to another in the car, support the inference that the defendant exercised dominion and control over the vehicle.

There is no more than a temporal and spatial nexus between the defendant and the contraband, which is insufficient proof of control. The eviction notice, without more, was insufficient to show that the room in which it was found was the defendant's bedroom, and, further, it could not be used to show that the room was exclusively for the use of the defendant. Presumably, an eviction notice that was addressed to both the defendant and a Jane Doe would concern any inhabitant of the house. There was also testimony about a woman being inside the house when the warrant was served.

The items found inside the vehicle do not buttress the inference of exclusive control, either. Again, paperwork regarding the house, even in the defendant's name, does not evince control, especially if the jury had to consider that the house was inhabited by at least two persons. Additionally, the testimony regarding the cellular telephone instruction book was that the defendant's name was decorated "with hearts and designs" and does not overwhelm us that there is more than a temporal or spatial nexus between the defendant and the drugs that were found in the backseat ashtray. There was insufficient evidence to conclude that the defendant exercised dominion and control over the heroin, and, therefore, the state did not meet its burden of proof necessary to convict the defendant of possession of narcotics.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty.

In this opinion the other judges concurred.