# STATE OF CONNECTICUT *v.* BERNARD EARL BILLIE
## (AC 30570)

Bishop, Robinson and Alvord, Js.

Argued May 28—officially released September 14, 2010

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Dina Urso*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Bernard Earl Billie, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of marijuana in violation of General Statutes § 21a-279 (c). On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to support his conviction of possession of narcotics with intent to sell and (2) certain portions of the trial court's jury instruction on reasonable doubt were

constitutionally infirm.[1] We reverse in part and affirm in part the judgment of the trial court.

The jury reasonably could have found the following facts. On November 9, 2006, at approximately 5 p.m., an anonymous informant notified the Stamford police department of suspected criminal activity in an area of Stamford known for drug trafficking. The informant stated that he had witnessed a "black male" placing narcotics underneath the rear porch of a certain house but did not provide any further information that could be used to identify the individual observed.

In response to this information, Richard Gasparino, George Moran and Adrian Novia, officers with the Stamford police department, were dispatched to the residence to investigate the complaint.[2] The officers proceeded to the rear porch area identified by the informant, where they discovered a clear plastic sandwich bag hidden underneath. The bag contained twenty-two smaller, individually wrapped packages of crack cocaine. Moran removed all but one of the smaller packages and replaced the sandwich bag in the hidden location.

After verifying that narcotics were located on the property, the officers set up surveillance. The rear porch area, which was surrounded on all sides by fencing, was accessible only by way of a driveway that extended from the front to the rear of the property. The officers,

---

[1] The defendant also claims that the court improperly permitted an expert witness to testify as to (1) general practices and behaviors of narcotics dealers and (2) an ultimate issue to be decided by the jury. Because we agree with the defendant's claim that the evidence was insufficient to support his conviction of possession of narcotics with intent to sell, we do not address these additional claims.

[2] The record suggests that other officers may have participated in the events leading to the arrest on November 9, 2006. Gasparino, Moran and Novia, however, were the only officers present at the location on that date who testified at trial.

therefore, determined that a person would have to use the driveway to retrieve the narcotics. Gasparino watched the entrance of the driveway from a position in front of the property, while Moran and Novia took a position in the basement of the house.[3] The basement, located underneath the rear porch, allowed the officers to observe simultaneously the narcotics and the rear of the property.

At approximately 9:35 p.m., Gasparino noticed a black male, later identified as the defendant, enter the driveway at the front of the property, and thereafter Gasparino notified Novia and Moran. Novia watched as the defendant walked from the driveway to the location of the narcotics. As the defendant removed the sandwich bag from underneath the porch, Novia and Moran emerged from the basement and identified themselves as police officers. The defendant dropped the sandwich bag, which then contained only the single package of crack cocaine, along with another bag containing marijuana.

The officers arrested the defendant in connection with the possession of twenty-two packages of crack cocaine and the marijuana. During the arrest, the defendant admitted to possessing the marijuana but made no statement regarding the crack cocaine. The officers searched the defendant but found no other contraband or evidence. Following the arrest, Novia conducted a records search and determined that the defendant previously had lived at that property in 2002. At the time of his arrest, however, the defendant was living at another location in Stamford.

The defendant was subsequently charged with possession of narcotics with intent to sell in violation of

---

[3] Novia testified that the officers had received permission from a tenant of the residence to be in the basement.

§ 21a-277 (a),[4] possession of narcotics in violation of § 21a-279 (a)[5] and possession of marijuana in violation of § 21a-279 (c). A jury trial was held from May 6 to 8, 2008. At oral argument, the defendant moved for a judgment of acquittal on May 7, 2008, which was denied by the court. On May 8, 2008, the jury returned a verdict of guilty on all counts, and the defendant was sentenced on July 15, 2008.[6] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence adduced at trial was insufficient to support his conviction of possession of narcotics with intent to sell.[7] Specifically,

---

[4] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[5] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[6] At sentencing, the court merged the conviction of possession of narcotics with the conviction of possession of narcotics with intent to sell. The defendant was sentenced to ten years incarceration and five years of special parole on the charge of possession of narcotics with intent to sell and one year of incarceration on the charge of possession of marijuana, to be served concurrently.

[7] In order to prove that a defendant is guilty of possession of narcotics with intent to sell, the state must prove beyond a reasonable doubt that the

the defendant claims that the state did not produce sufficient evidence to prove beyond a reasonable doubt that he (1) possessed twenty-two packages of crack cocaine and (2) had the intent to sell narcotics. We agree.

We begin by setting forth the appropriate standard of review. "Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985); see also, e.g., *State* v. *Butler*, 296 Conn. 62, 76, 993 A.2d 970 (2010). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the

defendant had (1) either actual or constructive possession of a narcotic substance and (2) the intent to sell narcotics. *State* v. *Williams*, 110 Conn. App. 778, 792, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008).

defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such consideration as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 338–39, 746 A.2d 761 (2000).

## A

We first consider the defendant's claim that the state presented insufficient evidence to establish beyond a reasonable doubt that he possessed twenty-two packages of crack cocaine.

In order to prove that a defendant is guilty of possession of narcotics with intent to sell under § 21a-277 (a), the state must prove beyond a reasonable doubt that

the defendant had either actual or constructive possession of a narcotic substance. *State* v. *Williams,* 110 Conn. App. 778, 785, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). "Actual possession requires the defendant to have had direct physical contact with the narcotics." (Internal quotation marks omitted.) *State* v. *Gainey,* 116 Conn. App. 710, 721, 977 A.2d 257 (2009). Constructive possession, on the other hand, is "possession without direct physical contact." (Internal quotation marks omitted.) *State* v. *Berger,* 249 Conn. 218, 225, 733 A.2d 156 (1999). "To prove either actual or constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it." *State* v. *Cruz,* 28 Conn. App. 575, 579, 611 A.2d 457 (1992); see also *State* v. *Butler,* supra, 296 Conn. 78.

"Where . . . the [narcotic substance] was not found on the defendant's person, the state must proceed on the theory of constructive possession . . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger,* supra, 249 Conn. 225.

In his brief on appeal, the defendant has conceded to possession of the single package of crack cocaine recovered after his arrest. Therefore, we limit our inquiry to whether the state has presented sufficient evidence to establish beyond a reasonable doubt that

the defendant had knowledge of and control over the remaining twenty-one packages.

As stated previously, when narcotics are not found on the person of the defendant, "the state must proceed on the theory of constructive possession, that is, possession without direct physical contact." Id. Furthermore, when the defendant is not in exclusive possession of the premises, the state must show incriminating statements or circumstances that support an inference that "[the defendant] knew of the presence of the narcotics and had control of them . . . ." (Internal quotation marks omitted.) Id. The state claims that it has met this burden, arguing that knowledge and control of the remaining twenty-one packages reasonably could have been inferred from the correlation between the anonymous informant's observation and the actions of the defendant. We are not persuaded.

First, neither party disputes that the anonymous informant's statement to the Stamford police was limited to his witnessing a "black male" placing narcotics underneath the rear porch of a certain house. This general description alone, totally devoid of any additional identifying characteristics or traits, did not provide sufficient information for the jury reasonably to have concluded that the defendant was the individual observed by the informant. The individual observed very well may have been the defendant or just as readily a drug dealer or user hiding his stash of narcotics.[8] The evidence simply does not make this clear. Thus, in the absence of additional identifying information, the jury could not have concluded that the defendant was the

---

[8] This alternative interpretation is based on a statement made by the state's witness, Lieutenant Timothy Shaw of the Stamford police department: "[Drug dealers and drug users] are also hiding [their stashes] from anyone else who may want it, which would be another seller, which would be someone who uses. We've had incidents of someone seeing someone hide their stash and someone else would go by and take it from them."

individual observed by the informant without resorting to speculation.

Second, we believe that the state's argument conflates the two separate requirements of constructive possession: knowledge and dominion and control. See, e.g., *State* v. *Berger*, supra, 249 Conn. 225. To establish constructive possession, the state relies heavily on evidence that the defendant purposely entered the property, proceeded directly to the location of the narcotics and immediately removed the sandwich bag from the hidden location without having to look or feel around. The state argues that this evidence, along with the defendant's prior residency at the location, permits a reasonable inference that the defendant knew of and exercised dominion and control over all twenty-two packages of crack cocaine.

Although we are mindful that "[w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record"; *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); and we are only to ask "whether there is a reasonable view of the evidence that supports the jury's verdict of guilty"; *State* v. *Sivri*, supra, 231 Conn. 134; we believe that this evidence is relevant to whether the defendant had knowledge of the narcotics but does not support a reasonable inference of dominion and control. As this court has recognized, "contraband found in a public area could have been secreted there by virtually anyone." *State* v. *Brunori*, 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). Therefore, "[t]o mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." Id., 436–37.

In rejecting the state's argument, we rely on two other facts adduced at trial: (1) the narcotics were found at a location in an area of Stamford known by the police department for drug trafficking and (2) as the state's own witness testified, it was not uncommon for a drug dealer or user to watch an individual hide his or her "stash" and then steal it. Considered altogether, we believe that the link between the evidence and the conclusion that the defendant possessed the remaining twenty-one packages of crack cocaine is tenuous. Without additional evidence, any conclusion that the defendant previously had dominion and control of the other twenty-one packages would be based simply on possibilities, surmise or conjecture. Therefore, we conclude that the evidence required the jury to resort to impermissible speculation instead of drawing a permissible inference.

Third, we reject the state's argument that the crack cocaine was so well hidden that only the true owner would know of its location.[9] Restated in a slightly different manner, the state basically contends that the hiding

---

[9] The fact that the anonymous informant saw someone placing narcotics in the subject location illustrates that the individual placing the narcotics under the porch was capable of being observed.

of individually wrapped packages of crack cocaine is an act of ongoing control. Although we do not take issue with the state's argument, the jury simply could not have concluded from the evidence presented, without resorting to impermissible speculation, that the defendant hid the narcotics. See *State* v. *Williams*, 16 Conn. App. 75, 79, 546 A.2d 943 (1988) ("jury may not speculate to reach a conclusion of guilt").

Finally, the cases cited by the state to support its contention that there is a sufficient nexus between the defendant's conduct prior to arrest and a finding of dominion and control are easily distinguishable.[10] The cases relied on by the state show that a compelling correlation between the actions of a defendant prior to arrest and the conclusion of dominion and control is required before we will find that the jury's conclusion was a reasonable inference. Unlike the evidence in this case, the evidence in those cases showed a strong correlation between the defendant's actions and the inference of control. For example, in *State* v. *Somerville*, 214 Conn. 378, 391, 572 A.2d 944 (1990), our Supreme Court found the testimony of two witnesses, both of whom observed the defendant dealing narcotics and hiding them just prior to arrest, sufficient to support an inference that the defendant had constructive possession of narcotics found under a garbage can. Similarly, in *State* v. *Forde*, 52 Conn. App. 159, 163–65, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999), this court determined that a jury reasonably could have inferred that the defendant possessed a paper bag containing narcotics on the basis of the testimony of two police officers, each of whom had observed the defendant sitting and conducting a drug

[10] The three cases relied on by the state are *State* v. *Somerville*, 214 Conn. 378, 572 A.2d 944 (1990), *State* v. *Forde*, 52 Conn. App. 159, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999), and *State* v. *Santiago*, 17 Conn. App. 273, 552 A.2d 438 (1989).

deal near the location of the bag. Finally, in *State* v. *Santiago*, 17 Conn. App. 273, 277–79, 552 A.2d 438 (1989), this court found that a jury reasonably could have inferred that the defendant possessed narcotics found under the driver's seat of his vehicle from evidence that the defendant owned the vehicle, was seen driving it just prior to the discovery and had been seen placing an item under the driver's seat shortly before narcotics were discovered in that area.

Unlike the previously mentioned cases, the state has failed to produce evidence that shows a compelling correlation between the defendant's actions in this case and the conclusion that the defendant controlled the narcotics. In contrast to the specific, detailed descriptions provided by the witnesses in *Somerville* and *Forde*, the informant in the present case provided only a general, vague description of the individual observed. Moreover, the actions relied on to establish control in *Somerville*, *Forde* and *Santiago* occurred contemporaneously with the observation of the defendant near the area where the narcotics were located. In the present case, however, the acts of the defendant relied on by the state to prove control occurred after the narcotics were removed from the location by the officers.

Accordingly, because there was insufficient evidence for the jury reasonably to have concluded that it was the defendant who had hidden the narcotics in the first instance and insufficient evidence to buttress an inference of dominion and control by the defendant, we conclude that there was insufficient evidence for the jury to have found the defendant guilty of possessing the remaining twenty-one packages of crack cocaine that were not found on his person at the time of his arrest.

## B

We next consider the defendant's claim that the state presented insufficient evidence to prove beyond a reasonable doubt that the defendant harbored the requisite intent to sell narcotics.

The following additional facts are relevant to our review of the defendant's claim. At trial, the state called Lieutenant Timothy Shaw of the Stamford police department to testify as an expert on narcotics. Shaw explained that the quantity of narcotics in an individual's possession is a key difference between possession for personal use and possession with intent to sell. According to Shaw, an individual "with a very small amount," one or two packages, typically intends to use it, while "someone [who] has a lot of individually wrapped [packages] . . . is more inclined to be someone who is going to sell it . . . ."[11] In response to the state's questioning, Shaw specifically testified that possession of twenty-two individually wrapped packages of crack cocaine was more consistent with "[p]ossession with intent to [sell], based on the numbers."[12]

---

[11] At trial, Shaw testified as follows: "An example of possession [for personal use] would be someone with a very small amount, and it would be based on the evidence that we would get, which would be sometimes the surveillance. We may watch someone go into an area and make a purchase and leave and then, if we stop that person and they have one or two bags, it kind of confirms what we see.

"Other chances are we may see the amount of the evidence that they have, you know. When someone has a lot of individually wrapped [packages of narcotics], that is more inclined to be someone who is going to sell it versus someone with a lesser amount, and someone with a lesser amount may also have some paraphernalia to actually ingest the evidence. And depending on what the drug is, it would change what the paraphernalia would be."

[12] On appeal, the defendant argues that the court improperly permitted Shaw to testify as to an ultimate issue in the case. Because we conclude that the evidence was insufficient to prove beyond a reasonable doubt that the defendant had the intent to sell narcotics, notwithstanding this testimony, we do not address this claim.

In order to prove that a defendant is guilty of possession of narcotics with intent to sell under § 21a-277 (a), the state must prove beyond a reasonable doubt that the defendant had the intent to sell narcotics. See *State v. Williams*, supra, 110 Conn. App. 790–93. "[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [I]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence. . . .

"The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. . . . Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell. . . . In addition, the absence of drug paraphernalia indicates that the substance is not intended for personal use, but rather for sale to others." (Citations omitted; internal quotation marks omitted.) Id., 791–92.

In the present case, there was insufficient evidence to show beyond a reasonable doubt that the defendant harbored the requisite intent to sell narcotics. Although the state argued that the defendant possessed twenty-two individually wrapped packages of crack cocaine, we have concluded that the evidence only supports a finding that the defendant possessed a single package. According to the state's own expert witness, possession of such a small quantity generally is more consistent

with possession for personal use rather than with intent to sell. Although the defendant was arrested in an area known for drug trafficking without any drug paraphernalia on his person, in light of the amount he possessed, we cannot say that the cumulative impact of all the facts, along with the reasonable inference drawn from these facts, supports the jury's conclusion that he harbored the requisite intent to sell narcotics.

## II

In the defendant's second claim, he argues that certain portions of the court's jury instruction regarding reasonable doubt were constitutionally infirm. Specifically, the defendant claims that the court's instruction improperly diluted the state's burden of proof by instructing the jury that a reasonable doubt is (1) "a doubt for which a valid reason can be assigned," (2) "a real doubt, an honest doubt" and (3) "the kind of doubt which in the serious affairs of everyday life you would pay heed and attention to."[13]

---

[13] With respect to reasonable doubt, the court instructed the jury as follows: "The phrase reasonable doubt has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word reasonable.

"A reasonable doubt is a doubt for which a valid reason can be assigned. It is a doubt that is something more than a guess or a surmise. It is not a conjecture or a fanciful doubt. Not all doubts are reasonable ones.

"A reasonable doubt is based upon reason. It is a doubt for which you can, in your own mind, conscientiously give a reason. A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt that has its foundation [in] the evidence or lack of evidence. It is the kind of doubt, which, in the serious affairs of everyday life, you would pay heed and attention to.

"Now, of course, absolute certainty in the affairs of life are almost never attainable. And the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty.

"What the law does require, however, is that after hearing all the evidence, if there is something in that evidence or lack of evidence that leaves in the minds of the jury as reasonable men and women reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and be found not guilty. If there is no reasonable doubt, then the accused must be found guilty.

"Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt. It is consistent with guilt and is inconsistent with any other reasonable conclusion."

After reviewing the defendant's claim, we find that it is without merit. As the defendant concedes, our Supreme Court previously has upheld the portions of the challenged instruction and determined that they do not constitute reversible error. See, e.g., *State* v. *Ferguson*, 260 Conn. 339, 369–71, 796 A.2d 1118 (2002); *State* v. *Griffin*, 253 Conn. 195, 205–208, 749 A.2d 1192 (2000); *State* v. *Velasco*, 253 Conn. 210, 249, 751 A.2d 800 (2000); *State* v. *Ellis*, 232 Conn. 691, 705, 657 A.2d 1099 (1995); *State* v. *Campbell*, 225 Conn. 650, 661–62, 626 A.2d 287 (1993). Furthermore, we reject the defendant's request that we abandon our Supreme Court precedent and adopt the cumulative error approach followed by the United States Court of Appeals for the Second Circuit. Compare *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991) ("[w]e decline to create a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts"), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992) with *Gaines* v. *Kelly*, 202 F.3d 598, 607 (2d Cir. 2000) ("[e]ven were each and every one of the individual definitions of reasonable doubt to pass constitutional muster, their cumulative effect may violate constitutional due process"). As we have recognized, "[t]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." *State* v. *Reis*, 33 Conn. App. 521, 527, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994).

The judgment is reversed only as to the conviction of possession of narcotics with intent to sell and the case is remanded for resentencing. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.