******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARTIN NOVA
(AC 36073)

Lavine, Alvord and Mullins, Js.

*Argued September 15—officially released December 15, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Richard Emanuel*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *Stephen J. Sedensky III*, state's
attorney, and *Sean P. McGuinness*, assistant state's
attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Martin Nova, appeals from the judgment of conviction, rendered after a trial to the court, of one count of possession of narcotics in violation of General Statutes § 21a-279 (a) and one count of possession of narcotics within 1500 feet of a school in violation of § 21a-279 (d). On appeal, the defendant claims that there was insufficient evidence to sustain his conviction. We agree and therefore reverse the judgment of the trial court.[1]

At trial, the following pertinent evidence was adduced. Pursuant to an ongoing investigation, members of the Danbury Police Department's special investigations division obtained a warrant to search both the defendant and apartment unit four (apartment) of the building at 429 Main Street in Danbury (building) for narcotics, drug paraphernalia, and related items. The evidence established that the defendant visited the apartment daily, often ate there, left his children there for babysitting, and sometimes stayed overnight if he had been drinking. On the basis of their prior surveillance, however, police believed that this was the defendant's residence.

On October 3, 2012, several Danbury police officers conducted surveillance of the building in preparation for execution of the warrant. Shortly after the surveillance began, the defendant drove into the building's parking lot, exited his car, and ascended the building's external staircase to the second floor, where the main entry door of the apartment was located. He entered the apartment through the main entry door, which opened into the kitchen. He reemerged a few moments later. He then ascended the external staircase to a balcony on the third floor of the building that adjoined the upper of the apartment's two levels and remained on the balcony for approximately one minute. Then, he descended to the building's second floor, and disappeared briefly from the officers' sight before returning to his car.

Shortly after the defendant returned to his car, police observed a brief meeting between the defendant and another individual in the building's parking lot. Specifically, the officers saw a white male drive a pickup truck into the parking lot and park next to the defendant's car. The defendant opened the pickup truck's passenger side door, leaned in, and spoke to the driver for approximately one minute. During the meeting, police did not observe any hand-to-hand contact or the exchange of any item. Afterward, the pickup truck left the parking lot.

Moments later, Detective Luis Ramos observed the driver of the pickup truck, who had stopped at a red traffic signal approximately twenty feet away, "making a furtive movement . . . ." In particular, Ramos

observed the driver lean down and to the right several times. It appeared to Ramos that the driver would snort something, then straighten up and wipe his nose. From his vantage point, Ramos did not see drugs or hear the driver snorting.

Police did not conduct a motor vehicle stop of the pickup truck after Ramos observed the driver's furtive movements. Instead, they detained and handcuffed the defendant. The defendant did not resist or make any incriminating statements when police handcuffed him or when they subsequently escorted him into the apartment to begin conducting their search.

When police entered the apartment to conduct the search, only one of its three occupants, Lisette Espinal, was at home. The apartment was also occupied by Denise Espinal,[2] Lisette Espinal's sister and the defendant's sister-in-law; and Camilo Santos. A former occupant, Odalis Santana, had moved out of the apartment that morning.

The search of the apartment revealed drugs and drug paraphernalia throughout. In the kitchen, a knotted plastic bag containing crack cocaine and a plastic bag containing powder cocaine were in a kitchen cabinet; and clear plastic bags, aluminum foil, and colored tape containing cocaine residue were in a garbage can. On the third floor balcony, which adjoined the bedroom Santana had occupied, officers found a clear plastic sandwich bag containing twelve small yellow ziplock bags in a Wal-Mart shopping bag.[3] In a locked bedroom on the apartment's lower level, occupied by Denise Espinal, officers found cocaine residue inside the lid of a key box.

The search also revealed two documents that bore the defendant's name. One of the documents, found on the kitchen table, was a January, 2012 earnings statement from Hubbell Incorporated that listed the defendant's address as 17 Washington Avenue, Danbury. The other document, found in the living room, was an October 1, 2012 Western Union money transfer receipt that showed a transfer of $200 from the defendant to an individual in the Dominican Republic.

The search of the defendant revealed two cell phones but no cash or drugs. The search continued in the defendant's car, which did not contain any contraband.

On the basis of the evidence presented, at the conclusion of the trial, the court made the following oral findings of fact. "[O]n October 3, 2012, members of the Danbury Police Department . . . special investigations unit were conducting surveillance at 429 Main Street, specifically, referencing unit 4, in Danbury, Connecticut. The location was well known to the police, as the defendant himself, as well as the location, specifically, were noted as targets, with regard to the particular investigation that was being conducted. Members of

the Danbury police special investigations nit indicated that this was an ongoing investigation, which had involved their participation and their observation, at this particular location, on multiple occasions. That throughout the course of this ongoing investigation, the defendant, who was the target of the investigation, was seen at 429 Main Street in Danbury. That the defendant was also seen in a particular vehicle, which was a black Audi, which had been noted by many officers, to be at this location . . . .

"Several officers, on the day in question . . . all of [whom] the court found to be credible witnesses, were able to observe the defendant at different vantage points . . . .

"The defendant was seen by officers entering [the building], walking up to . . . [and] entering [the apartment]. He was then also seen up on the higher level balcony. . . . [Police] . . . could see that he was standing outside of that area and also could see that he had entered the apartment itself, on the second floor.

"After that . . . the defendant was seen meeting with an individual . . . in a blue pickup truck. [W]hen the pickup truck arrived . . . [t]he defendant was seen to have opened the passenger door, to have had a very brief encounter with this individual, and the individual . . . immediately thereafter left the scene.

"Officers were able to observe this individual, who was operating the blue pickup truck in what, based on their training . . . and experience . . . was deemed to be suspicious activity, in that . . . [he] appeared to be leaning down, as if snorting some substance.

"Officers and the evidence . . . indicated that, in fact, cocaine is a substance that can be ingested, by way of snorting. And, that the behavior that was observed . . . appeared, in the officers' opinion, to be consistent with that of snorting.

"Officers made a decision, at that point, not to pursue the pickup, but to pursue . . . the target of their investigation and, therefore, entered [the apartment] and detained the defendant.

"At that time . . . in various portions of the home were found a white substance, both a rock and powder form, which later proved to test positive for cocaine.

"There were also other items and paraphernalia, such as glassine bags and tinfoil that had powdered residue— and that residue as well tested positive for cocaine— and were consistent with the idea of packaging the product. . . . [T]he items were then sent to the state lab and were tested and proved positive for cocaine."

After making these findings, the court explained that this was a case involving the constructive possession of illegal narcotics by the defendant, given that the narcotics were not found on his person and that he was

not in exclusive possession of the apartment. The court explained further that in a case of nonexclusive possession, the court may not infer that the defendant knew of the presence of narcotics and had control over them unless there are other incriminating statements or circumstances to buttress such an inference. The court then ruled on the two counts in the information.

With respect to count one, possession of narcotics, the court concluded that the state had proven the defendant's constructive possession of the narcotics found in the apartment. More specifically, the court concluded that the following were incriminating circumstances that supported an inference that the defendant knew of the presence of cocaine in the apartment and that he exercised dominion and control over the cocaine: (1) "the defendant himself, as well as the location . . . were noted as targets, with regard to the particular investigation that was being conducted"; (2) police frequently had seen the defendant and his vehicle at the apartment and believed it was his residence; (3) police saw him on the balcony in close proximity to the paraphernalia, the small ziplock bags, and he had no reason to be on the third floor level, "presumably but for the fact that he was there seeking out some product that related to the ziplock bags"; (4) he walked through the kitchen, an area with which he was familiar on account of his daily presence at the apartment; (5) police saw him meeting with the driver of the pickup truck, who subsequently appeared to snort some substance, consistent with how cocaine may be ingested; and (6) Denise Espinal's testimony regarding his access to the apartment—namely, her testimony that he visited the apartment primarily to see his brother, who at the time was living in the Dominican Republic—lacked credibility.

With respect to count two, possession of narcotics within 1500 feet of a school, the parties stipulated that the building was within 1500 feet of a school and that the defendant was not a student at the school. Accordingly, the court concluded that the state also had proven count two beyond a reasonable doubt.

Thereafter, the defendant pleaded guilty to a part B information charging him with being a subsequent offender and received a total effective sentence of ten years imprisonment, execution suspended after six years, and five years of probation.[4] This appeal followed.

The defendant claims that there was insufficient evidence to sustain his conviction because the state failed to prove beyond a reasonable doubt that he constructively possessed the drugs found in the common areas of the apartment.[5] The state counters that the evidence and reasonable inferences drawn therefrom establish incriminating circumstances that buttress an inference that the defendant knew of the presence and character of the cocaine and paraphernalia in the apartment and

exercised dominion and control over them. Specifically, the state contends that the following supported an inference that he exercised dominion and control over the drugs found in the apartment's common areas: the defendant's presence on the balcony and in the kitchen; his unfettered access to the apartment; and the circumstances surrounding his meeting with the pickup truck driver, from which it was reasonable to infer that a drug deal had occurred because (1) the defendant was seen in the apartment just before the meeting and (2) the driver appeared to be snorting cocaine afterward. We agree with the defendant.[6]

We first set forth the standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the [finding of guilt]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier of fact] to conclude that a basic fact or an inferred fact is true, the [trier of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Slaughter*, 151 Conn. App. 340, 345, 95 A.3d 1160, cert. denied, 314 Conn. 916, 100 A.3d 405 (2014).

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 17, 115 A.3d 447 (2015).

The following principles are pertinent to the defendant's particular claim on appeal. "In order to prove that a defendant is guilty of possession of narcotics . . . the state must prove beyond a reasonable doubt that the defendant had either actual or constructive possession of a narcotic substance. . . . Actual possession requires the defendant to have had direct physical contact with the narcotics. . . . Constructive possession, on the other hand, is possession without

direct physical contact. . . . To prove either actual or constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it. . . .

"Where . . . the [narcotic substance] was not found on the defendant's person, the state must proceed on the theory of constructive possession . . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Citations omitted; internal quotation marks omitted.) *State* v. *Billie*, 123 Conn. App. 690, 696–97, 2 A.3d 1034 (2010). In determining whether the attendant incriminating circumstances support an inference of constructive possession, the proper focus is on the relationship between the defendant and the contraband found in the apartment rather than on the relationship between the defendant and the apartment itself. See, e.g., *State* v. *Gainey*, 116 Conn. App. 710, 722–23, 977 A.2d 257 (2009).

"[I]t is well settled that if the contraband is found in a place where the defendant does not have exclusive possession, the presence of the defendant near the contraband without more is insufficient to support an inference of possession." *State* v. *Brunori*, 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). "To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." (Internal quotation marks omitted.) *State* v. *Fermaint*, 91 Conn. App. 650, 655, 881 A.2d 539, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005).

In the present case, because drugs were not found on the defendant's person, the state proceeded at trial on the theory that the defendant constructively possessed the drugs found in the common areas of the apartment. It is undisputed that the defendant did not exclusively possess the apartment or make any incriminating statements. Thus, the question is whether the other circumstances were sufficiently incriminating to support an inference that the defendant constructively possessed the narcotics police discovered in the apartment.

In reaching its judgment, the court relied on several factors that it deemed sufficiently incriminating to sup-

port an inference of constructive possession: the defendant's status as the target of the police investigation; his presence in the areas of the apartment where drugs and paraphernalia were found—namely, the kitchen and the balcony; his meeting with the driver of the pickup truck; and his unfettered access to the apartment, for which Denise Espinal provided an incredible explanation. None of these factors, alone or in combination with the others, supports such an inference. We address each of them in turn.

First, the defendant's status as a target of the investigation is not, in our view, an incriminating circumstance that supports an inference that he constructively possessed the cocaine and paraphernalia in the apartment. The fact that the defendant was a target of the investigation merely indicates law enforcement's suspicion that he might be guilty of an offense. Neither the officers' suspicions nor their decision to target the defendant, however, is a permissible consideration in determining the defendant's guilt. Under our law, fact finders are not permitted to use the defendant's arrest or the information as evidence of the defendant's guilt. Indeed, our courts routinely instruct jurors that the information "is merely the formal means of accusing a person of a crime and bringing [him] to trial. You must not consider it as any evidence of the guilt of the defendant or draw any inference of guilt because the defendant has been arrested and formally charged." Connecticut Criminal Jury Instructions (4th Ed. 2008) § 1.2-2, available at http://www.jud.ct.gov/JI/criminal/part1/1.2-2.htm (last visited December 3, 2015). It would be incongruous to forbid a jury from considering a defendant's arrest as evidence of guilt, yet to permit a trial court to use the defendant's status as a target of an investigation as a basis for concluding that he is guilty.

Second, the defendant's presence in the kitchen and on the balcony established nothing more than a temporal and spatial nexus between him and the cocaine and packaging materials found in those areas. The evidence established merely that he briefly appeared in those areas.[7] Indeed, our cases "show that a compelling correlation between the actions of a defendant prior to arrest and the conclusion of dominion and control is required before we will find that the [fact finder's] conclusion was a reasonable inference." *State* v. *Billie*, supra, 123 Conn. App. 701. We find the following cases instructive in assessing whether the correlation between a defendant's actions and a conclusion that he exercised dominion and control over narcotics is sufficiently compelling.

In *State* v. *Butler*, 296 Conn. 62, 993 A.2d 970 (2010), the evidence showed that during a traffic stop, the defendant made a movement toward the center console of the car he was driving and closed the console as police officers approached. The officers observed a

plastic bag that contained cocaine protruding from a corner of the console. Id., 79. The court held that "[t]his manipulation of the console within which the narcotics were discovered . . . buttressed the jury's inference that the defendant knew about the narcotics and had control over them." Id.

Similarly, in *State* v. *Goodrum*, 39 Conn. App. 526, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995), the evidence established that the defendant had carried a brown paper bag into an apartment. Id., 529. He was seen leaving the apartment without the brown paper bag. Id., 531. Thirty minutes later, police officers found narcotics in the apartment in a brown paper bag similar to the bag the defendant was seen carrying into the apartment. Id., 529–30. The court concluded that these circumstances, along with witness testimony that the narcotics were not in the apartment prior to the defendant's entry, buttressed an inference of constructive possession. Id., 533.

Lastly, in *State* v. *Forde*, 52 Conn. App. 159, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999), the evidence established that police officers saw the defendant approach the passenger side of a pickup truck and take money from the driver. Id., 165. They next observed the defendant make a subtle waving motion to one of his confederates and then saw his confederate walk toward a stone wall where the narcotics were later discovered in a paper bag. Id. The confederate then returned to the pickup truck and handed the driver an item. Id. We determined that a jury reasonably could have inferred that the defendant constructively possessed the narcotics in the paper bag on the basis of the officers' observation of the defendant conducting a drug deal near the location of the bag. Id.

Unlike the previously mentioned cases, the state has failed to produce evidence that shows a compelling correlation between the defendant's actions in this case and the conclusion that he controlled the narcotics in the apartment. Indeed, in *Butler*, *Goodrum*, and *Forde*, the evidence showed the defendants making suspicious movements toward the narcotics, or carrying a bag similar to one later found to contain narcotics, or engaging in a drug sale near the narcotics. Here, by contrast, there was no evidence that the defendant was observed carrying anything into the kitchen or onto the balcony, no evidence that he touched anything while in the kitchen or on the balcony, and no evidence that he left the kitchen or balcony with anything. In other words, there was no compelling correlation between the defendant simply being in the apartment where drugs and paraphernalia later were discovered and the conclusion that he constructively possessed those narcotics and paraphernalia.

Accordingly, the court's conclusion that the defendant "had no reason to be on that third floor level . . .

presumably, but for the fact that he was there seeking out some product that related to these ziplock bags,'' was speculative. It required further speculation for the court to conclude, on the basis of the defendant's mere proximity to the packaging materials and his passage through the kitchen, that he controlled the cocaine found in the kitchen cabinets and garbage. The kitchen was a common area used by the apartment's occupants and was adjacent to the main entry door, requiring the defendant, like anyone entering the apartment, to pass through it.

Third, the evidence regarding the defendant's meeting with the driver of the pickup truck and the driver's apparent snorting of some substance thereafter falls short of supporting an inference that the defendant controlled the cocaine in the apartment. During their meeting, the defendant merely leaned in and spoke with the driver very briefly. There was no evidence of any suspicious movement by which cocaine may have changed hands.[8] See *State* v. *Fermaint*, supra, 91 Conn. App. 660 (concluding that defendant's furtive movement of leaning forward from backseat of car toward driver did not support inference of defendant's constructive possession of drugs found on driver); cf. *State* v. *Forde*, supra, 52 Conn. App. 165 (finding constructive possession where officers witnessed money and item change hands). Moreover, Ramos could not see from his vantage point the substance that the driver appeared to be snorting. He could testify only that snorting is a means of ingesting cocaine. Finally, because police did not conduct a stop of the pickup truck, there was no confirmation of what the driver was snorting, if anything.

Even considered together with the defendant's prior presence in the apartment, the driver's apparent snorting of some unknown substance following a brief conversation with the defendant did not tend to support an inference of a drug sale and, by extension, constructive possession. Without evidence of any item changing hands or of the substance the driver was supposedly consuming, his suspicious movements did not transform the defendant's prior presence on the balcony and in the kitchen into something more than mere proximity to the contraband seized from those places. To conclude otherwise required the court to engage in impermissible speculation.

Fourth, the defendant's access to the apartment over the prior nine month span did not support an inference of his knowledge and control of the drugs or paraphernalia inside. Although a January, 2012 earnings statement and an October, 2012 money transfer receipt that bore the defendant's name were found in the apartment, all of the apartment's occupants had access to the areas in which these documents were found. See *State* v. *Gainey*, supra, 116 Conn. App. 723 (concluding that

utility shutoff notice and mobile phone instruction manual bearing defendant's name, found in vehicle that was not currently under his control, did not establish his control of drugs found in ashtray of vehicle's rear passenger compartment).

Denise Espinal, the defendant's sister-in-law, testified that he visited the apartment daily. The court concluded that this was an incriminating circumstance in part because it elected not to credit Denise Espinal's testimony that "the only reason . . . that the defendant came to this apartment was, simply, to see his brother, and he did so on a regular basis . . . ." The court based this adverse credibility determination on its finding that, on further questioning, Denise Espinal indicated that "in fact, the defendant's brother was not even in the United States during the time in question."

Again, as we have noted, the defendant's relationship to the contraband, not his relationship to the apartment, is the proper focus of the constructive possession inquiry. See *State* v. *Gainey*, supra, 116 Conn. App. 722–23. In this case, given that the defendant nonexclusively possessed the apartment, the fact that Denise Espinal lacked credibility regarding the basis for his daily presence in the apartment sheds little, if any, light on the central question of his relationship to the drugs and paraphernalia located therein.

Finally, we are equally unpersuaded that even when all of the previously mentioned factors are considered together, they establish anything more than a temporal and spatial nexus between the defendant and the cocaine found in common areas of the apartment. Thus, they are insufficient proof that the defendant exercised dominion and control over the narcotics. Stated differently, the evidence did not establish a compelling connection between the defendant's acts and the conclusion that he controlled the contraband. See *State* v. *Billie*, supra, 123 Conn. App. 701. Construing the evidence in the light most favorable to sustaining the trial court's judgment, we do not find incriminating circumstances buttressing a reasonable inference of constructive possession.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty.

In this opinion the other judges concurred.

[1] The defendant also claims that his right to conflict-free representation was violated when the trial court failed to inquire into a potential conflict of interest involving his attorney. Because we conclude that the evidence was insufficient to sustain the defendant's conviction, we do not reach this claim.

[2] Although the police believed that the defendant was married to Denise Espinal and lived with her in the apartment, the evidence at trial indicated that she had married Ronny De Oleo Nova, the defendant's brother, in the Dominican Republic in 2011. Police found, but did not seize, men's clothing in her locked bedroom. Denise Espinal testified that De Oleo Nova moved into the apartment in late October, 2012, and that she kept the clothing in anticipation of his arrival.

[3] Unlike the materials found in the kitchen garbage, the materials seized

from the balcony were not submitted for forensic analysis.

[4] At trial, the court admitted testimony that in 2000, police conducting a search of the defendant's then residence on Chapel Street in Danbury found nineteen plastic bags of cocaine in his apartment and a magnetic key box containing eight more bags of cocaine attached to a radiator in the hallway outside; that the defendant admitted the cocaine was his; and that he was arrested and pleaded guilty to a charge of possession of narcotics.

[5] In its oral decision, the trial court stated that it was "not suggesting anything with regard to [the] locked [bedroom]." Because the trial court indicated that the contents of the locked bedroom did not play a role in its judgment, whether there was sufficient evidence that the defendant constructively possessed the key box containing cocaine residue that was found in that room is not a part of our analysis of the defendant's claim on appeal.

[6] To the extent that the defendant failed to preserve his claim, we have held that an unpreserved claim of evidentiary insufficiency is reviewable because it is of constitutional magnitude. "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. There being no practical significance, therefore, for engaging in a *Golding* analysis of an insufficiency of the evidence claim, we will review the defendant's challenge to his conviction . . . as we do any properly preserved claim." (Internal quotation marks omitted.) *State* v. *Lewis*, 303 Conn. 760, 767 n.4, 36 A.3d 670 (2012).

[7] Notably, there was testimony that Odalis Santana, who, until that morning, occupied the bedroom adjacent to the balcony where the defendant had been seen, had sold marijuana.

[8] We note that the state did not charge the defendant with sale of narcotics on the basis of his meeting with the pickup truck driver.